CHARLES C. WHITE, TREASURER OF LANCASTER COUNTY, PLAINTIFF IN ERROR, v. THE CITY OF LINCOLN, DEFENDANT IN ERROR.

1. **License Moneys.** Moneys received for license of the sale of malt, spirituous and vinous liquors in cities of the second class, belong to the school fund of the county, and should be paid over to the treasurer of the proper county. Where such moneys are not paid voluntarily, the treasurer may maintain an action in his own name to recover the same. *City of Tecumseh v. Phillips, ante*, p. 305, cited and approved.

2. **Construction of Statutes.** In the construction of statutes, the earliest continues in force, unless the two are clearly inconsistent with, and repugnant to, each other.

3. ———. There is no repugnancy between the provisions of section 350, chapter 29 of the criminal code of the Revised Statutes [Gen. Stat., 855], and the act entitled "an act to incorporate cities of the second class and to define their powers." Approved, March 1, 1871.

4. **Constitutional Law: TITLE OF ACTS.** The object of the constitutional provision that "no bill shall contain more than one subject, which shall be clearly expressed in its title", is to prevent surreptitious legislation by incorporating into a bill obnoxious provisions which have no connection with the general object of the bill, and of which the title gives no indication.

5. ———: ———. Where a bill has but one general object it will be sufficient if the subject is fairly expressed in the title.

ACTION brought in the district court of Lancaster county, Nebraska, by the above plaintiff against the said defendant to recover the sum of twenty-two thousand five hundred and twenty-four dollars and fifty-six cents, with interest from the 24th day of September, A. D., 1873, for money alleged to have been received by the said city for license granted by the said city for the sale of malt, vinous and spirituous liquors within the limits thereof.

5 505
6 191
6 284
8 31
9 352
10 279
10 478
11 382
12 387
13 19
13 254
16 241
16 339
16 683
16 684
17 391
18 140
21 657
24 591

5 505
25 676
25 882

5 505
33 819

5 505
28 628
29 385

5 505
30 791

5 505
35 572

5 505
37 346

5 505
46 73

5 505
48 876

5 505
52 233
53 525

5 505
57 75

The defendant answered the petition, admitting the incorporation of said city of Lincoln as a city of the second class, but denying all the other allegations in the petition; and for a second defense admitted the receipts in all of the sum of three thousand nine hundred and ninety-nine dollars and seventy-five cents as license and no more, and averred that before the beginning of this suit the same was paid over by the city of Lincoln to the treasurer of Lancaster county.

The defendant answered further that within the times mentioned in the petition, to-wit: from June 29, 1869, and June 7, 1873, it received about fifteen hundred dollars as a license tax assessed by the city council of the city of Lincoln for police and city purposes, and not as a license under chapter 29, criminal code, R. S., 1866, which sum was received from a large portion of persons named in the petition; and that all of said moneys, except three thousand nine hundred and ninety-eight dollars and seventy-five cents, was, prior to the 23d day of September, A. D. 1873, expended by the city of Lincoln in works of internal improvement and otherwise for said city.

Upon trial before POUND, J. the plaintiff offered in evidence a large number of receipts from various persons for money paid over to the city treasurer of said city of Lincoln, for the sale of liquors in said town, which amounts had not been paid over to the county treasurer. Portions of these receipts to the amount of twenty-five dollars for each person to whom license had been granted were admitted in evidence, but all of said receipts, and all other evidence tending to show that amounts in excess of said twenty-five dollars had been paid into said treasury from time to time by various parties, were excluded.

At the request of the defendant the court instructed the jury as follows:

White v. The City of Lincoln.

1. "The law provides that the city council may license liquor sellers within the corporate limits of the city and might fix the amount to be paid for said license at a sum not less than $25.00 and not more than $1,000, and that for licenses granted within the corporate limits of a city of the second class, the council have the sole right to fix the amount to be charged for such licenses."

2. "The city council under the laws relating to cities of the second class have the additional power to levy a license tax, which may be exercised by said council, in addition to the amount which the council shall fix as the sum to be paid for license to sell intoxicating liquors."

3. "The defendant, the city of Lincoln, in this action is liable to the plaintiff for such sum only as you find from the proof to have been charged and received as a license for the sale of malt, spirituous and vinous liquors. And the defendant is not liable to the plaintiff for such sum as you may find to have been charged and received by defendants as a license tax for city and police purposes."

4. "If you find from the evidence that the city council did grant and issue the several licenses for the sale of spirituous, malt, and vinous liquors to the persons mentioned in the petition, and you further find that in their discretion the said council charged the several persons to whom such licenses were issued the sum of $25 each and you find that in addition to this the said council did also levy a license tax for city and police purposes, of any additional sum, you cannot allow the plaintiff for this additional sum charged, although both sums are included in the same receipt."

5. "If you find that any of the amount as shown by the receipts offered in evidence was levied by the council as a license tax for city and police purposes, and was by the treasurer of the city at the time he gave the receipt for the same, retained for such purposes, you will deduct

from the amount of said receipt the said sum received for said city and police purposes, and allow plaintiff the remainder only."

The jury, under the evidence and these instructions, returned a verdict for plaintiff for $2,916.66. Judgment on the verdict, cause brought here by plaintiff upon exceptions to the exclusion of evidence, and instructions to jury.

*Brown, England & Brown,* for plaintiff in error.

The ordinances under which the licenses were issued for which the money in controversy was paid required the payment of not only the amount which the defendant admits belongs to the school fund, but also the amount which it required to be paid into the city treasury for the use of the city, before the license should be issued. It is evident, the whole sum was collected for licenses to sell intoxicating liquors, and belongs to the school fund: The declaration or direction to the treasurer contained in the ordinance as to how much was collected for school, and how much for city purposes, is absolutely void, and but a flimsy device on the part of the city to defraud the school fund.

Subdivision four, of section 31, of chapter 9, does not authorize the city council to impose a tax for revenue purposes. The most that this provision authorizes the council to do is to charge a fee sufficient to pay for issuing the license, and to meet such other expenses as may thereby be imposed. Cooley's Constitutional Limitations, 200, 586. Cooley on Taxation, 408. *State v. Roberts,* 1 Gill & John., 506. *Mays v. Cincinnati,* 1 Ohio St., 268. *Johnson v. Philadelphia,* 60 Pa. St., 451. *Ash v. People,* 11 Mich., 347.

That this law was not intended to authorize a tax for revenue purposes is apparent from the fact that there is no limit to the amount of special tax the council may

impose. Section 4, of article 8, of the old constitution, provides that "the legislature shall provide for the organization of cities and incorporated villages, by general laws, and restrict their powers of taxation, assessment, etc., * * to prevent the abuse of such power." The fact that subdivision four, of section 31, contains no limit as to the amount of tax that may be imposed (except the one we contend for), would, as an act for revenue purposes, render it obnoxious to the constitutional provision.

*N. S. Scott* and *Philpott, Galey & Knight,* for defendant in error.

The city council are empowered to license the sale of intoxicating liquors within the corporate limits. General Statutes, 851, Sec. 572.

The city council of cities of the second class are also empowered to *levy* and *collect* a *license tax. Id.,* 144, Sec. 31.

These powers are distinct and independent of each other. The former is to be exercised for the sole benefit of the *school fund,* the latter for the exclusive use of the corporation, and is intended for revenue for city purposes.

The sale of intoxicating liquors is in this state a crime unless it is licensed. Gen. Stat., 854, Sec. 881.

That business by a license is made lawful. Then it is subject to an additional tax the same as any other lawful business. See Cooley on Taxation, 386. *Coulson v. Harris,* 43 Miss., 728. *Drysdale v. Pradat,* 45 Miss., 445.

That this *license tax* is intended for revenue for city purposes, we think is established—

*First.* By the language used, license tax. Each word in a statute shall have effect. Cooley on Const.

Lim., p. 57.    Sedgwick on Constitutional and Stat., 260–2.    Bouvier Law Dictionary, title License and Tax. Cooley's Definition of Tax, p. 1.

*Second.*    By the enumeration of the different kinds of business which shall be subject to a license tax.    Gen. Stat., 144, Secs. 31–4.

*Third.*    By the immediate context in the same section.    The three preceding subdivisions, as also the fourth, speak of the sources and the only sources of revenue to the city.

*Fourth.*    The power of the city to charge in the matter of *license* is limited within $25 and $100, while there is no limit on the power of the city council to levy and collect a *license tax.*    Large assessments for such purposes have been held legal.    *Burch v. Savannah,* 42 Georgia, 596.    *Baker v. Panola County,* 30 Texas, 86.

If the city council had the right under the law to make such assessments, clearly, for levying and collecting such *license tax,* the city cannot be liable to account for the same as for *school fund* to any authority, but the city is the lawful owner of the money.

MAXWELL, J.

In the case of *The City of Tecumseh v. Phillips, ante,* p. 305, this court held that where money was collected by the corporate authorities of towns, and cities of the second class, for license to sell intoxicating liquors, and such funds were not paid over voluntarily to the proper county treasurer, that it was his duty to enforce payment thereof by suit.    The authority to bring such action, although not expressly given by statute, is clearly implied from the obligation he is under to make the collection.

Lincoln was incorporated as a town under the provisions of Chap. 53 of the Revised Statutes, on the 6th

day of April, 1868. The exact date at which it became a city of the second class does not appear from the record. In June, 1871, an ordinance relating to the sale of intoxicating liquors in that city was passed. The following is a copy:

Section 1. "Be it ordained by the mayor and council-men of the city of Lincoln, Nebraska, that all petitions for the sale of liquors within the corporate limits of the city of Lincoln shall be presented to the city clerk of the city of Lincoln, and by said clerk presented to the city council of the city of Lincoln, at a regular meeting of the same, and before any license shall be granted by the council, the person petitioning for the same shall execute a bond in the penal sum of not less than one thousand dollars, and not to exceed five thousand dollars, as shall be determined by the council in such case, with good and sufficient surety to be approved by the council, and conditioned that during the continuance of his license he will not keep a disorderly house, and that he or they will not allow gambling with cards, dice or any other implements or devices used in gambling, within his or their house or within any outhouse, yard or other premises in his or their control, and for the payment of all damages, fines and forfeitures which may be adjudged against him under the provisions of Chap. 29 of the criminal code of the State of Nebraska and the ordinances and by-laws of the city of Lincoln; and further, said petitioner shall pay to the city treasurer a license of twenty-five dollars, and the said treasurer is hereby required to pay the same to the county treasurer, as provided in section 336, chapter 29, of the criminal code of the State of Nebraska, and that the sum of three hundred dollars shall be paid by said petitioner to the city treasurer, and take said treasurer's receipt for said sums of money, and present said receipts to the city council before any license shall be issued; and further, each petitioner shall do and per-

form all the conditions imposed upon him by the city council before any license shall be issued to him," etc.

On the 15th of February, 1869, an act was passed by the legislature, entitled an act "To provide for the incorporation of cities of the second class and to define their powers."

Section 32 of the act provides that "said city council shall have exclusively all the powers of the county commissioners, so far as the same relates to licensing or prohibiting the sale of intoxicating liquors in the city, and may license or prohibit ten-pin alleys and billiard tables. They shall fix the amount at not less than twenty-five dollars per year, which shall be paid into the county treasury for the use of the school fund of the county; and in addition thereto, may require a license of not to exceed five hundred dollars for the sale of intoxicating liquors, and not exceeding fifty dollars for each billiard table and ten-pin alley, which shall be paid into the city treasury and belong thereto, before the license is issued."

On the 1st day of March, 1871, the legislature passed an act entitled an act "To incorporate cities of the second class and to define their powers," which repealed the former act, but which contains no provision similar to that contained in section 32 of the act of 1869.

Section 31 of the act of March 1, 1871, authorizes the corporate authorities to enact ordinances, "to levy and collect taxes for general revenue purposes not to exceed five mills on the dollar valuation in any one year, on all the real, personal and mixed property within the limits of said city, taxable according to the laws of the State of Nebraska, the valuation of such property to be taken from the books or assessment rolls of the precinct assessors of the proper precinct."

The fourth subdivision of the section authorizes the enactment of ordinances to "levy and collect license tax on auctioneers, contractors, druggists, hawkers, peddlers,

bankers, brokers, pawnbrokers, merchants of all kinds, grocers, confectioners, restaurants, butchers, taverns, public boarding houses, dram-shops, saloons, liquor sellers, billiard tables, bowling alleys, and other gaming tables," etc.

Section 336 of Chap. 29 of the Revised Statutes (Gen. Stat. 851), provides that "the county commissioners of any county in this state may, at any regular session of said board of commissioners, grant and issue a license for the sale of malt, spirituous, and vinous liquors," etc.

"The third subdivision of the section provides that the applicant "shall pay into the county treasury for the use of the school fund, to be distributed as other moneys, the sum of not less than twenty-five dollars, nor more than five hundred dollars, at the discretion of the county commissioners, and file the treasurer's receipt therefor in duplicate, with the county clerk, before such license shall be issued."

Section 350 (Gen. Stat. 855, Sec. 586), provides that "all the powers and duties in this chapter devolving upon the county commissioners, shall belong to and be exercised exclusively by the proper authorities of any or all incorporated towns or cities of this state, within the incorporated limits thereof, and the authorities of such towns and cities are hereby empowered to make all needful rules, and pass all necessary ordinances, decrees, or orders to carry out the intent of this chapter. They may determine what municipal officer shall receive the petition, file the bond and receipt, and issue the license as in section 336 required; *provided, however*, that such incorporated cities and towns may require such additional sum as to them may seem best, not to exceed one thousand dollars, which sum, together with the sum herein required to be paid to the county treasurer, may be paid

to the treasurer of the town or city who shall account for the same."

Under this statute, without any question, all the money received for license for the sale of malt, spirituous and vinous liquors, should be paid over to the treasurer of the proper county for the use of the school fund. Has the act to provide for the incorporation of cities of the second class so changed the law as to entitle the defendant to retain money thus collected? It is unnecessary to determine whether the authority to impose a *license tax* upon "dram-shops," "saloons," and "liquor sellers," is necessarily restricted to license for the sale of malt, spirituous and vinous liquors, as that question does not arise in the case, this money having been received by the defendant for licenses to sell intoxicating drinks.

It is a familiar rule in the construction of statutes that the earliest statute continues in force unless the two are clearly inconsistent with, and repugnant to, each other, or unless in the latest statute some express notice is taken of the former, indicating an intention to repeal it. *The People v. Weston*, 3 Neb., 315. And statutes are not considered to be repealed by implication, unless the repugnancy between the new provision and the former statute be plain and unavoidable. *Commonwealth v. Herrick*, 6 Cush., 465.

In this case there is no repugnancy between the two acts. We see nothing in the act providing for the incorporation of cities of the second class that indicates an intention on the part of the legislature to permit such cities to retain any portion of the money received for licenses for the sale of malt, spirituous and vinous liquors. The court, therefore, erred in excluding .evidence from the jury showing the entire amount of money received by the defendant for such licenses, and also erred in giving the second and fourth instructions on the part of the defendant. The third and fifth

instructions, given at defendant's request, appear to be predicated upon the supposition that there was testimony tending to show that the money in question had been levied for city and police purposes, and were calculated to mislead the jury.

The third section of an "act to amend an act to incorporate cities of the second class, and to define their powers, approved March 1, 1871, and to equalize certain taxes therein mentioned," approved February 25, 1875, was before this court in the case of *The City of Tecumseh v. Phillips, ante*, 305, and was held to be unconstitutional. Formerly the title of an act was regarded as no part of it, but might be considered for the purpose of ascertaining the intention of the legislature when the body of the statute appeared to be in any respect doubtful or ambiguous. Cooley's Con. Lim., 141. *United States v. Palmer*, 3 Wheat., 610. *Burgett v. Burgett*, 1 Ohio, 480. 1 Ld. Raym., 77. But it cannot enlarge or restrain the provisions of the act itself. *Hadden v. Collector*, 5 Wall., 107.

Section nineteen, of article two, of the constitution of 1867, provided that, "No bill shall contain more than one subject, which shall be clearly expressed in its title." In *The People v. Mahaney*, 13 Mich., 494, the supreme court of Michigan in construing a similar provision in the constitution of that state, say: "The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage

secured through legislative bodies whose members were not generally aware of their intention and effect."

The object of this constitutional provision is to prevent surreptitious legislation by incorporating into bills obnoxious provisions, which have no connection with the general object of the bill and of which the title gives no indication. It will be sufficient, however, if the law have but one general object which is fairly expressed in the title of the bill. The third section of the act approved February 25, 1875, provides that "in all cases in which cities of the second class have collected and expended for the use and benefit of such cities, either in works of internal improvement or otherwise, moneys collected for licenses for the sale of intoxicating liquors, such expenditures are hereby declared to be legal, and the same is hereby ratified and confirmed, and such cities of the second class are hereby exonerated from any and all liability therefor."

As there is nothing in the title of the act to indicate the object contemplated by section three of the act, we must hold that section to be void.

It is unnecessary to discuss the question whether the right to license an employment carries with it the right to charge a license fee therefor with a view to raising revenue. A license is issued under the police power of the city, while the exaction of a license fee for the purpose of raising revenue is an exercise of the power of taxation. How far such taxation can be sustained under the act providing for the incorporation of cities of the second class, it is unnecessary to decide, as the question does not arise in this case. For the causes assigned the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.