THE BOARD OF COUNTY COMMISSIONERS OF DAWSON COUNTY, PLAINTIFF IN ERROR, v. C. W. McNAMAR, DEFENDANT IN ERROR.

1. **Construction of Statutes:** CONSTITUTIONAL LAW. The act entitled, "An act to enable counties, cities, and precincts to borrow money on their bonds, or to issue bonds, to aid in the construction of works of internal improvement in this state, and to legalize bonds already issued for such purposes," approved February 15th, 1869, and the act amendatory thereof, approved March 3d, 1870, are constitutional.

2. **Internal Improvements.** The building of a county court-house is not a work of internal improvement, nor was it contemplated by the above mentioned acts.

3. **County Bonds:** AUTHORITY FOR. County bonds issued to raise money to build a court-house recited that they were issued under the authority of the aforesaid "internal improvement" acts. *Held,* That this reference to a statute which gave no authority was no ground for declaring the bonds invalid so

long as ample authority was found elsewhere which had been substantially observed. *Held further*, That such authority was given in chapter nine of the Revised Statutes, 1866, sections 21, 22, and that the bonds were valid.

4. ——— : ———. County bonds may be issued to raise money to meet current expenses in case of a deficit in the county revenue, but to do this, they must be first authorized by "a vote of the electors of the county."

ERROR to the district court of Dawson county. Tried below before GASLIN, J.

*C. J. Dilworth* for plaintiff in error, cited *Knox County v. Aspinwall*, 21 How., 544. *Moran v. Miama County*, 2 Black, 732. *Mercer v. Hackett*, 1 Wall., 83. *Supervisors v. Schenk*, 5 Wall., 784. *Meyer v. Muscatine*, 1 Wall., 384. *Hamlin v. Meadville*, 6 Neb., 227.

*C. W. McNamar, pro se.*

The power to borrow money or issue securities does not exist to counties by implication. It must be granted by express terms, in which the terms of the grant will measure the extent. Dillon on Municipal Corporations, sec. 10, 81; Dillon on Municipal Bonds, sec. 6, and cases cited; *Hamlin v. Meadville*, 6 Neb., 227. *Dundy v. Richardson county*, 8 Neb., 508. The act of February 15, 1869, page 92, laws of 1869, is in conflict with sec. 19, art. 2, of the Constitution of the State of Nebraska, then in force. The case of *Hallenbeck v. Hahn*, 2 Neb., 377, is not conclusive. Said act embraces more than one subject. Authorizing bonds to be issued, and legalizing bonds already issued, are distinctive subjects, though embraced in the title, and are amendatory in effect of sec. 19, of chap. 9, R. S. 1866, and in conflict with the constitution. *City of Tecumseh v. Phillips*, 5 Neb., 305. *White v. City of Lincoln*, id., 505. *State v. Young*, 47 Ind., 150. *Ham-*

*lin v. Meadville*, 6 Neb., 234.   *Walker v. The State*, 49 Ala., 329.   *Exp. v. Conover*, 51 Ga., 571.   *Slawsen v. Racine*, 13 Wis., 398.   *State v. Dawsman*, 28 Wis., 541. *Quinlan v. Rogers*, 12 Mich., 168.   36 Texas, 14.   41 Texas, 404.   43 Ala., 224.   27 Ark., 440.

LAKE, J.

This is a proceeding in error to reverse the judgment of the district court for Dawson county.   To the petition in error, the defendant in error has formally answered, denying the errors assigned by the plaintiff, and alleging others of which he complains, and for which relief is prayed.   This answer is in the nature of a cross-petition in error, and will be so treated.

The action below was brought by the defendant in error with the view of obtaining a perpetual injunction against the collection of taxes levied to meet certain bonded indebtedness of said county as it was to fall due, and which was incurred as follows, viz.: fifty thousand dollars in bridge bonds, issued January 1st, 1873; thirty thousand dollars in court-house bonds issued July 1st, 1873; and twenty thousand dollars in funding bonds, issued February 1st, 1874.

In view of all the circumstances, the object sought by this action does not commend itself to the conscience of a court of equity.   If accomplished, it would amount, practically, to a repudiation of the public indebtedness represented by these bonds, for which the people of Dawson county—the plaintiff below with the rest—have voluntarily received, and are now in the enjoyment of its fruits.   Fortunately, however, for the good name and reputation of the county hereafter, financially, there is nothing in the record requiring or even authorizing the court to pronounce against the

validity of either of these three classes of bonds, to provide for which the taxes in question were levied.

As to the bridge bonds, the only objection urged is that the act under which they, in terms, purport to have been issued, is unconstitutional. They contain the recital that they were "issued for building a bridge across the Platte river near Plum Creek station in the county of Dawson, and state. of Nebraska, under and in pursuance of an act of the legislature of the state of Nebraska, entitled, 'An act to enable counties, cities, and precincts to borrow money on their bonds, or to issue bonds to aid in the construction of works of internal improvement in this state, *and to legalize bonds already issued for such purposes,*' approved February 16th, 1869. Also of an act amendatory of sections two and five of said act, approved March 3d, 1870."

That all steps preliminary to the issue of these bonds required by statute were duly taken is not questioned, but it is urged against the constitutionality of the acts referred to that they embrace more than one subject, which was expressly prohibited by the provision in section 19, article 2, of the constitution of 1867, which declared that "no bill shall contain more than one subject, which shall be clearly expressed in its title." If this premise, that more than one distinct subject were included, were true, the conclusion contended for, that the acts are void, would be irresistible. Questions depending upon the validity of these acts have frequently arisen, but we have no recollection that this objection to them was ever raised until now. *Hallenbeck v. Hahn,* 2 Neb., 377. *White v. The City of Lincoln,* 5 Neb., 505. *Reineman v. The C. C. & B. H. R. R. Co.,* 7 Neb., 310. *State v. Thorne,* 9 Neb., 458.

While in particular cases there might be serious doubts as to the power of the legislature to validate

that which was before invalid, we have none as to the constitutionality of its exercise in the manner of this enactment, when properly applied.   And this is the whole of the objection.   It is insisted that the words of the title above quoted, which we have *italicised*, and under which section 8 of the original act is included, refer to a different subject from those which go before. But suppose that instead of this title it had been, "An act relative to aiding works of internal improvement by counties, cities, and precincts," can there be any doubt that it would have covered every provision of these acts?   What was the object to be accomplished by this legislation ?   Was it anything more than the authorization of municipal aid to such improvements? And was not the legalizing of acts by which such aid had been already undertaken, to the extent that it could be done, quite as germain to that subject as are those provisions directing particularly what steps must be taken to accomplish it in the future ?   After due consideration we fail to discover any merit in this objection, and must hold that as to the bridge bonds there was no error in the judgment of the district court.

But that court held both the court-house and funding bonds to be void, and enjoined so much of the levy complained of as was based thereon.   Upon just what grounds the court so held does not appear; but, premising they were those urged by the defendant in error in this court, the ruling cannot be sustained. The court-house bonds also purport to have been issued under the before-mentioned internal improvement act, which, even if held to be constitutional, it is claimed by the defendant in error do not authorize this sort of county indebtedness.   And this we think is the proper view to be taken of these statutes.   The building of a court-house, although an important and necessary county work, has never been classed among

" works of internal improvement," by which is meant,
as the term is here used, only those works within the
state in which the whole body of the people are sup-
posed to be more or less interested, and by which they
may be benefited. And they more commonly have
reference to " the improvement of highways and chan-
nels of travel and commerce." *U. P. R. R. Co. v.
Commissioners of Colfax Co.*, 4 Neb., 450. But this
reference to a statute which was supposed to be an
authority, when in fact it was not, is no ground on
which the court is justified in declaring the bonds in-
valid, unless fully satisfied that their issue was not
warranted by any other provision of law. If author-
ity be found elsewhere, which has been substantially
followed, that is enough. And we find such author-
ity in chapter 9 of the Revised Statutes, 1866, which
was in force when these court-house bonds were is-
sued.

Section 19 of this chapter, among other things, pro-
vides that the county commissioners " shall have power
to submit to the people of the county, at any regular
or special election, the question whether the county
will borrow money to aid in the construction of pub-
lic buildings," which of course includes county court-
houses. Sections 21 and 22 provide the mode of such
submission, and in case a proposition for such aid is
carried at the election, and the proposed loan made,
there are other sections directing as to the levy and
collection of taxes to enable the county to meet the
obligation thus assumed. Now, although these court-
house bonds were issued nominally under the " inter-
nal improvement " act, its directions being fully ob-
served, it is evident that there must have been a sub-
stantial compliance with the requirements of chapter
9, for in the last clause of section *one* of the " improve-
ment " act, it is provided that the submission of ques-

tions therein contemplated shall be "in the manner provided by chapter 9 of the revised statutes of the state of Nebraska for submitting to the people of a county the question of borrowing money." There was, then, a proper submission of the question of incurring the indebtedness, and that it was adopted by the requisite majority is made clear by the sixth item of the stipulation of facts.

In section 23 of the aforesaid chapter 9 there is a provision which evidently contemplates that such a debt should mature, and the money for its payment be raised within ten years. And it was pressed upon our attention with considerable earnestness that these ·bonds not maturing within that time were void. It is possible that in this single particular the statute was not strictly complied with, but surely that is no reason at all for a court of equity to say to the county: "You may repudiate the debt." It should be observed, too, that there are no words of positive prohibition against a longer credit than ten years being given. It is a mere inference of legislative intent drawn from these words: "When the object is to borrow money to aid in the erection of public buildings the rate (of tax) shall be such as to pay the debt in ten years." But there is nothing to indicate an intention to make void all loans to a county for a longer time. Again, in the case of these particular bonds, quite an amount of the principal, in addition to the annual interest, matures, and should be paid within ten years from the date of the loan.

The people of Dawson county, in good faith we presume, by the requisite majority elected to effect this loan for the purpose of providing themselves with what they considered a suitable court-house. In accordance with this decision the proper county officers prepared the bonds on which the money was ob-

Dawson County v. McNamar.

tained, which we suppose was applied to its intended use. While this was being done there was no complaint. If there were technical irregularities no voice in objection was heard. By their silence all seemed to be willing to overlook technicalities so long as the money was being obtained and put into the desired structure, and it is not until the day of payment arrives that it is thought worth the while of any one to criticise the course pursued in any particular. Under the circumstances of this case equity will not indulge in technical criticism to enable the debtor to repudiate a just obligation, the fruits of which are still retained.

As to the twenty thousand dollars of funding bonds, we see no well founded objection. They purport to have been issued under sec. 14, ch. 13 of the Gen. Statutes, which gave ample authority therefor, as will be seen by reference to the 4th subdivision thereof, which provides that " the credit of the county " may be pledged to " meet the current expenses of the county in case of a deficit in the county revenue." But to do this, it is required by the next section that it be first authorized by " a vote of the electors of the county," which in the case of these bonds appears to have been done.

Such being our views, we are of the opinion that there is no equity in the case for which an injunction should be granted as to any of the bonds. The judgment of the court below, as to the court-house and funding bonds, is reversed, and a judgment will be entered in this court, dismissing the case for want of equity, at the costs of the defendant in error.

JUDGMENT ACCORDINGLY.