WHITAKER & RAY CO. v. ROBERTS, County Superintendent of Schools, et al.

,(Circuit Court, D. Nevada. July 8, 1907.)

No. 847.

1. SCHOOLS AND SCHOOL DISTRICTS—CLAIMS FOR SUPPLIES—ACTION—PARTIES.

Where, in a suit against a county school superintendent a board of citizens and taxpayers, and a board of county commissioners, to compel payment for certain school desks purchased by a board of school trustees, as authorized by Comp. Laws Nev. §§ 1294, 1298, it appeared that the trustees executed the contract, received the desks, and allowed complainant's claim, which was thereafter disallowed by defendants, a bill, not joining the school trustees representing the school district, from whose funds any judgment would have to be paid, nor praying any relief against them. was demurrable.

2. SAME—DISALLOWANCE OF CLAIMS.

Comp. Laws Nev. § 1287, provides that no public money can be paid out except on warrants of the county auditor issued on orders of the county superintendent of public schools, and section 1338 makes it the duty of the county superintendent of public schools to draw his order on the county auditor in favor of the trustees of any school district in his county for any bill signed by the trustees and authorized by the act, except that, if in the opinion of the superintendent the bill contains an exorbitant or unwarranted charge, he may refuse to draw his order until ordered to do so by the board of county commissioners, who are required to act as auditors on any bill rejected by the county superintendent. Act Feb. 13, 1905, p. 23, § 9, authorizes the trustees of the district in question to purchase new school furniture, and provides that no purchase shall be valid until it has received the approval of a majority of a board of taxpayers and citizens created by such act. Held that where, after the allowance of a bill for school desks by school trustees, it was allowed only for a portion of the amount by the county superintendent, whose ruling was confirmed by the board of citizens and taxpayers and the board of county commissioners, the allowance of the bill by the trustees was insufficient to establish the claim as a valid claim for the full amount against the district.

3. SAME—PAYMENT—ENFORCEMENT.

Prior to the allowance of claims against a school district by the officers selected therefor by law or the establishement of such claim by a judgment against the district, proceedings will not lie to compel payment of the claims by the officers of the county.

4. MANDAMUS—SCOPE OF WRIT—SCHOOL DISTRICTS—CLAIMS—PAYMENT.

After a claim against a school district has been duly established and liquidated, mandamus is the proper remedy to compel payment thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 226.]

5. EQUITY—GROUNDS OF JURISDICTION—MULTIPLICITY OF SUITS.

Where complainant's claim against a school district for school desks was partly disallowed, all the desks having been purchased under a single contract, complainant was not entitled to sue in equity to compel payment of the full amount claimed in order to prevent a multiplicity of suits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 167, 169.]

On Demurrer.

Samuel Platt, for complainant.
S. Summerfield, for defendants.

FARRINGTON, District Judge (orally). December 4, 1905, the board of trustees of Carson school district, Ormsby county, Nev., entered into a written contract with the complainant for the purchase of 410 school desks. The desks having been delivered, the board of trustees allowed the complainant's bill, amounting to $2,385.10. Subsequently, the claim was presented for approval to the board of three citizens and taxpayers of the school district, appointed under the provisions of the statute of Nevada of February 13, 1905, p. 23, § 9. This board refused to allow the claim in full, and approved it for but $2,065.30. The claim was next presented to the defendant E. E. Roberts, county superintendent of public schools for Ormsby county, who declined to approve it for any amount in excess of $2,065.30, on the ground that the claim was exorbitant. July 18, 1906, the complainant presented the claim to the board of county commissioners of Ormsby county, with the request that the board compel the county superintendent to allow and approve it for the full amount claimed. This the board refused to do, but approved the claim to the amount of $2,065.30, and no more.

September 14, 1906, the complainant filed its bill in equity in this court. In this bill the county superintendent of schools, the board of three citizens and taxpayers, and the board of county commissioners are defendants.

The complainant asks: First, that the board of three citizens and taxpayers and the board of county commissioners of Ormsby county be compelled to allow and approve complainant's bill in full, and to indorse their approval thereon; second, that E. E. Roberts, county superintendent of public schools, be compelled to allow and approve complainant's bill in full, and indorse his approval thereon, and to draw his warrant on the county auditor in favor of the complainant for the sum of $2,385.10, the total amount of complainant's bill, with interest thereon at 7 per cent. per annum, and also for $300 additional as attorney's fees; third, that it be decreed that complainant is justly entitled to the sum of $2,385.10, and interest thereon from June 15, 1906, to the date of judgment herein, at 7 per cent. per annum, also to the sum of $300 additional for attorney's fees, and also to its costs and other appropriate relief.

The board of school trustees is a body corporate. Comp. Laws Nev. § 1294. It had the power, and it was its duty, to supply schoolhouses within its district with necessary furniture, and to pay for the same out of the county school moneys belonging to the district. Comp. Laws Nev. §§ 1294, 1298.

The board of school trustees executed the contract attached to complainant's bill, and received the desks contracted for, but the price has never been paid. The relief prayed for does not include a demand for a judgment against the board of school trutees; neither is the school district, nor its board of trustees, in any manner made a party to this proceeding. Furthermore, it does not appear that the demand of the complainant has ever been reduced to a judgment. This court is asked to decree that the complainant is justly entitled to the full amount of its claim, with interest, costs, and attorney's fees, and also

to approve and ratify the action of the board of school trustees in allowing the claim. Such a decree, if rendered, would be rendered against no one, and could not be enforced; at best, it would be but the opinion of the court. The desire of complainant is to recover compensation for the desks furnished the board of school trustees. Such compensation must come, if at all, out of the school moneys belonging to the school district. Neither the county superintendent, nor the board of taxpayers, nor the board of county commissioners, is personally or officially liable in any manner for the desks. They entered into no contract, they received no desks, and they were not parties in any sense to the written agreement attached to the complainant's bill. The complainant makes no such contention, nor does it set up the breach of any contractual obligation by the defendants, or by either or any of them; neither does it show that they have violated any legal duty owing to the complainant. This court is simply asked to compel defendants to allow and approve complainant's demand in full, and to draw the appropriate warrants and orders for its payment, and for the payment of interest, costs, and attorney's fees.

The alleged contract, delivery of the desks, and failure to pay for them is set up in the bill to supply a basis for an order compelling defendants to approve the demand and draw the necessary warrants for its payment. The difficulty here is that the warrants, if paid, must be paid out of the moneys belonging to the district, and this involves an assumption that the validity of the contract alleged to have been executed by the board of school trustees of the district, and the amount due thereon, can be determined in a proceeding to which the district is not a party, and that the money belonging to the district can be taken without giving the district, or rather its board of trustees, their day in court. The mere statement of the proposition carries with it its own refutation. The school district must be heard in this court before the court can pronounce a decree of any validity determining its liability or depriving it of any money or property. Liebman v. City and County of San Francisco (C. C.) 24 Fed. 705, 713.

It is true the board of school trustees approved and allowed the claim, but it was refused approval by each and all of the defendants. This approval by the trustees, standing alone, however, does not give the claim any binding effect against the school district. Before the claim is paid, it must be officially approved by the county superintendent, if not by the board of taxpayers and the board of county commissioners. If either or any of the boards or officials, whose approval is necessary to secure the payment of a claim against a school district, refuses such approval and rejects the claim, the effect is the same as though the claim had been rejected by each and all of such boards and officials. It cannot be treated as though it had been partly rejected and partly allowed. In this case, when the county superintendent of public schools and the board of citizens and taxpayers and the board of county commissioners refused to approve the claim for a sum in excess of $2,065.30, the complainant was legally in the same plight that it would have been had the board of school trustees also taken the same adverse action as the other boards and the county superintendent.

The board of school trustees of a school district is a body corporate. For many purposes it represents and acts as the district. For instance, it can sue and be sued, and valid judgments against it bind the district. It can make contracts for the district, and it has the custody of the schoolhouses and the control of the schools. But, in the allowance and payment of claims against the district, it is but one of the agencies through which the district expresses its will. The county superintendent of schools and the board of county commissioners are not a part of this body corporate. They are in no sense the school district, but they are the agents, or rather tribunals, by which claims against the district must be examined and allowed before they are voluntarily paid. Under the general school law of Nevada no public money can be paid out except "on warrants of the county auditor, issued upon orders of the county superintendent of public schools of such county." Comp. Laws Nev. § 1287.

It is the power and the duty of the county superintendent of public schools "to draw his order on the county auditor in favor of the trustees of any school district in his county for any bill signed by said trustees and authorized by this act; provided, * * * that, if in the opinion of the superintendent, any bill contains an exorbitant or unwarranted charge, he may refuse to draw his order until ordered to do so by the board of county commissioners, who shall act as auditors upon all bills rejected by the county superintendent." Comp. Laws Nev. § 1338.

The statute of February 13, 1905, p. 23, § 9, referred to in the bill of complaint, authorizes the school trustees of Carson school district to sell all or any of the real estate belonging to the district. The proceeds of such sales must be devoted to the purchase of a suitable site for a schoolhouse, or for the purchase of furniture and school supplies, providing "that all sales and all purchases of property as provided for in this act, shall be subject to the approval of a board of three (3) citizens and taxpayers of the said school district. * * * No sale or purchase made in accordance with the provisions of this section shall be valid unless it receive the approval of the majority of" said board.

If the desks in question were not purchased under the provisions of the statute of February 13, 1905, or with the proceeds of the sales therein authorized, it is doubtful whether the approval of the board of taxpayers is essential. It is unnecessary, however, to decide this question. It is sufficient to say that, unless complainant's claim is approved and allowed in the manner and by each and all of the various officials and boards, as provided in the statutes, it cannot be regarded as approved or allowed in any respect or to any degree, as against the district or as against its property. The approval by the board of trustees, without other approval, and in the absence of a judgment against the district, or rather against the board of school trustees of the district, will not afford any support to an order of this court directing the defendants to approve and allow complainant's claim.

Whatever power the statutes have vested in the county superintendent of public schools, the board of taxpayers, or the board of county

commissioners, to allow or reject claims against the Carson school district, is discretionary. Each board having a claim under consideration is authorized to allow or reject, as its best judgment dictates. It is the discretion of the board, not the discretion of the court, which is provided for in the statute. Discretionary power is in its very nature independent, and when it is controlled it ceases to be discretionary. If this court directs the county superintendent, or the board of taxpayers, or the board of county commissioners, in advance of any judgment against the district, to approve or reject complainant's bill, it is simply substituting its own discretion for the discretion of the several boards and the county superintendent, and assuming a power which is not conferred by law. The board of taxpayers, the county superintendent, and the board of county commissioners have already exercised their discretion. They may have made a mistake, but such a mistake would not be a legal wrong. If either defendant had any right to act on the claim, it had full legal power to allow or reject. The complainant, in the absence of fraud or other improper motives controlling the action of the defendants has no cause of action whatever against them because of their partial rejection of its claim.

This court cannot compel the defendants "to do over again what they have already done, but with a different result." Such an order would be void, unless the law has vested in this court the power to control and dictate the official judgment and discretion of the defendants. This court, as a court of equity, has no supervisory authority over the county superintendent of schools, the board of county commissioners, or the board of taxpayers. "Courts are not permitted, nor do they assume, to exercise any restraining or other influence in regard to the performance or nonperformance of discretionary duties, except when fraud, corruption, or bad faith is involved." 5 Pom. Eq. Jur. § 342; 1 Abbott, Municipal Corp. p. 197; Ingersoll on Pub. Corp. § 87.

It has been repeatedly held that the Circuit Courts of the United States have no power to issue writs of mandamus to state courts and officers except in aid of a jurisdiction already acquired. In such cases, "in those courts the judgment at law is necessary to support the writ, which is in the nature of an execution to carry the judgment into effect." Davenport v. County of Dodge, 105 U. S. 237, 242, 26 L. Ed. 1018; Graham v. Norton, 15 Wall. 427, 428, 21 L. Ed. 177; In re Blake, 175 U. S. 114, 118, 20 Sup. Ct. 42, 44 L. Ed. 94; Osborne v. Co. Com'rs of Adams Co. (C. C.) 7 Fed. 441, 443; Rosenbaum v. Bd. of Supervisors (C. C.) 28 Fed. 223; Gares v. Northwestern Nat. Bldg. L. & I. Ass'n (C. C.) 55 Fed. 209.

If in this case and in this court the complainant had already obtained a judgment against the board of school trustees of the district, establishing its claim, a writ of mandamus would issue, upon proper showing, to compel the necessary official action to provide for its payment. Such a writ would then be ancillary to the original action. It would be in aid of a jurisdiction already acquired. But no judgment has been obtained in this court, and no action has been brought here against the board of school trustees. No jurisdiction has been acquired. A writ of mandamus issued by this court, under such con-

ditions, would be absolutely void. This court has no more power to enter a decree compelling the board of county commissioners and the board of taxpayers to approve and allow complainant's claim than it has to issue a writ of mandamus to compel like action. Lack of jurisdiction cannot be supplied by stating the facts and demanding relief in the form of a bill in equity. Jurisdiction is a matter of substance, and not of mere form. Smith v. Bourbon County, 127 U. S. 105, 112, 8 Sup. Ct. 1043, 32 L. Ed. 73.

It has been earnestly contended that a court of equity has jurisdiction of this action in order to prevent a multiplicity of suits. In reply to this it is sufficient to say that there is but one contract set out in the bill. To that contract none of the defendants were parties. The party executing that contract, and who is alleged to have violated its terms, alone is liable. Ingersoll on Pub. Corp. § 89; United States v. Bitter Root Co., 200 U. S. 451, 479, 26 Sup. Ct. 318, 50 L. Ed. 550.

It is possible that the defendants, after complainant's claim has been put into a judgment, may refuse to provide for its payment; but this is a contingency which the court cannot anticipate. On the contrary, the presumption is, not only that if a judgment be obtained it will be correct, but that the county superintendent, the board of taxpayers, and the county commissioners will take proper action to provide for its payment. This court cannot presume or even anticipate that any public official or board will resist its judgment. State v. Noyes, 25 Nev. 31, 48, 56 Pac. 946.

If, after judgment is obtained, such a contingency should arise, no additional suits are necessary. The proper remedy would be a writ of mandamus based upon the judgment, and in the nature of a writ of execution. State v. Com'rs of Lander Co., 22 Nev. 71, 76, 35 Pac. 300; Labette Co. Com'rs v. Moulton, 112 U. S. 217, 221, 5 Sup. Ct. 108, 28 L. Ed. 698.

The demurrer is sustained.