GEORGE POFFENBARGER ET AL. v. LYDIA E. SMITH·
ET AL.

[FILED NOVEMBER 6, 1889.]

1. **Liquors:** STATUTES: CONSTITUTIONALITY. The title of the act
to regulate the license and sale of malt, spirituous, and vinous
liquors, etc., approved February 28, 1881, is broad enough to
cover a provision therein requiring the licensee and his bonds-
men to pay all damages which individuals may sustain in con-
sequence of intoxicating liquors furnished by him to another.

2. ———: CIVIL DAMAGES: EXPERT TESTIMONY. In an action by ·
a widow and her minor children to recover from certain saloon
keepers and their bondsmen for loss of means of support caused
by the death of the husband and father of the plaintiffs by
suicide, which, it was alleged, was caused by continued intoxi-
cation from liquor furnished by the defendants for several days
before his death, there was proof tending to show that for sev-
eral days before his death the deceased had been sober and that
the act was deliberately done. There was also proof tending
to show that for a considerable period prior to his death he had
been constantly under the influence of intoxicating drinks fur-
nished by the defendants. Physicians were thereupon called
who testified as experts to hypothetical questions as to the
probable effect of the continued use of intoxicating drinks in
causing suicide. *Held,* That such testimony under the facts.
proved was admissible.

3. **Objections** to testimony, *held,* properly sustained.

4. **Instructions.** Modification of instructions asked, *held,* correct.

ERROR to the district court for Gage county. Tried be-
low before CHAPMAN, J.

*Burke & Prout,* for plaintiffs in error:

Secs. 15, 16, and 18 of the act of 1881, commonly
known as the "Slocumb Law," conflict with sec. 11, art.
3, Const. (*Tecumseh v. Phillips,* 5 Neb., 305; *White v.
Lincoln,* Id., 505; *Ex parte Thomason,* 16 Id., 238; *Ives*

*v. Norris*, 13 Neb., 252.) The question of the constitutionality of the act was not before the court in *Pleuler v. State*, 11 Neb., 547, hence any statement therein relative to such question is an *obiter dictum*. (Wells, Res. Adj., sec. 581, and cases cited; *Carrol v. Carrol*, 16 How., 287.) The title of an act is the index to legislative intent and the courts cannot enlarge its scope. *(Ives v. Norris, supra;* Cooley, Const. Lim., p. 149.) The title to the act in question assumes simply "to regulate the license and sale," etc.; while the sections above mentioned relate to actions, civil and criminal, damages, maintenance of paupers, widows and orphans, jurisdiction, parties, evidence, and other matters outside the scope of its title. By force of these sections the well established rule that "damage  *  *  * must be the natural and proximate consequence of the act complained of" (2 Greenl., Ev., sec. 256), is abrogated. (*McClay v. Worral*, 18 Neb., 52; *Sellars v. Foster, ante*, 118.) The fact that the law has been treated as valid for nine years has no bearing on its constitutionality. (Cooley, Const. Lim., 188.) There was nothing in the case calling for the opinion of the physicians upon any point presented to them, and even if their testimony were admissible they were not shown to be competent to give such opinion. (*Soquet v. State*, 40 N. W. Rep. [Wis.], 391.)

*A. Hardy*, and *J. N. Rickards*, for defendants in error:

The title of the act of 1881 is broad enough to allow a provision that a liquor dealer shall pay for loss of means of support, this being simply a regulation of the sale. *Ives v. Norris* would have been in point had the repudiated section there merely provided that the owner of animals running at large should pay all damages caused by them; but the section in fact was entirely outside the scope of the title. The witnesses objected to were duly qualified, and hypothetical questions were properly asked them based on testimony of others. (*O'Hara v. Wells*, 14 Neb., 403;

*Williams v. Brown*, 28 O., 547; *People v. Luke*, 2 Kern. [N. Y.], 358.)

MAXWELL, J.

This action was brought in the district court of Gage county by the defendants in error against the plaintiffs in error to recover damages for loss of means of support caused by the death, from the use of intoxicating liquors, of John E. Smith, the husband of Lydia E. Smith, and the father of Leroy Smith and Nellie Smith, minor children of said Smith and wife. On the trial of the cause a verdict for the sum of $2,000 was rendered, and a motion for a new trial having been overruled, judgment was entered on the verdict.

There are fourteen assignments of error, but four of which are referred to in the brief of the plaintiffs in error, and these will be considered in their order.

1. It is claimed that the court erred in receiving any evidence in support of the petition because the object of the bill or act is not clearly expressed in the title and that the subject-matter of sections 15, 16, and 18 are not contained or referred to in the title of the bill. In *Pleuler v. State*, 11 Neb., 547, the question of the authority to license was considered by this court and the act sustained, and that decision has been adhered to ever since. The title of the act approved February 28, 1881, is as follows: "An act to regulate the license and sale of malt, spirituous, and vinous liquors, and to repeal chapter 53 of the code of criminal procedure of the General Statutes of 1873 entitled 'License and sale of liquors,' and to repeal an act entitled 'An act to amend section 575 of chapter 58 of the criminal code,' approved February 9, 1875, and to repeal an act entitled 'An act to regulate the issuance of licenses for the sale of malt, vinous, and spirituous liquors in the state of Nebraska,' approved February 25, 1875."

The title of the act in question is "An act to regulate the license and sale of malt, spirituous, and vinous liquors," etc. A provision in the body of the act declaring the liability for damages sustained by any person from the use of intoxicating liquors furnished to another by the licensee is clearly within the title of the act. The law regards the traffic as an evil and it attempts to regulate it and reduce the evils to the minimum: First, by requiring the petitioners to state that the "applicant for license is a man of respectable character and standing;" second, that he must pay for each license the amount required by the licensing board, which shall not be less than $500; third, public notice must be given of the application for license at least two weeks before the granting of the same and a time set for the hearing, and if there be "any objection, protest, or remonstrance filed in the office where the application is made, against the issuance of the license," a day shall be set for the hearing of the case, and if it shall be made to appear that any former license has been revoked for any misdemeanor against the laws of the state, or that the applicant has been guilty of the violation of any of the provisions of the act for one year preceding, then the license shall be refused. Either party may appeal. To enforce compliance with the law the applicant is required to give bond in the sum of $5,000, "conditioned that he will not violate any of the provisions of this act, and that he will pay all damages, fines, and penalties and forfeitures which may be adjudged against him under the provisions of this act." The licensee is absolutely prohibited from selling to an Indian, insane person, idiot, or habitual drunkard, and also to "any minor, apprentice, or servant under twenty-one years of age." He is required to "pay all damages that the community or individuals may sustain in consequence of such traffic," etc. There are other provisions, binding upon the licensee, which need not be noticed. The provision for damages is notice to every licensee and his

bondsmen to beware; and an assumption upon their part of the obligation imposed by statute. The sections referred to, therefore, are in harmony with the object of the act, not in conflict with the constitution, and are valid.

The second objection is that the court erred in receiving the testimony of certain physicians, as experts, to testify as to the cause of death. There is testimony in the record tending to show that John E. Smith had been sober for several days before his death, and there is also testimony tending to show that for several days prior to that time he had been under the influence of intoxicating liquors furnished by the defendants below. The immediate cause of his death appears to have been morphine administered by himself in two glasses of beer, in the saloons of the plaintiffs in error. The question arose, therefore, whether the case was one of deliberate suicide, or was caused by the use of intoxicating liquors. One of the experts, Dr. D. A. Waldon, after stating that he had been a practicing physician and surgeon for twenty-six years, was asked the following question:

Q. Supposing a man, thirty years of age, had been drinking hard for two weeks' time, and had been irregular about his meals and his going to bed during that time, what would be his natural mental and physical condition?

A. I should think a man's mental condition would be very much impaired by a debauch of that character.

Q. Doctor, would a man in that condition be more liable to commit suicide than a man who had for the past two weeks been regular in his habits, and had not been drinking to excess?

A. He most surely would.

Q. Why, doctor?

A. From the fact of the weakened and debilitated state of his mind. It is usually the case that men when they commit suicide do it after a debauch of that kind and character.

Cross-examination :

Q. Did you ever know, in your experience, or do you know, of any person committing suicide when not intoxicated or under the influence of liquor ?

A. I don't believe I ever knew a person to commit suicide unless they were drinking persons ; not to come under my observation.

Q. Do you pretend to say, as a physician, that such a a case has never been?

A. No, sir; I would not say that.

Q. And that a person would not commit suicide at any· time, except they were under the influence of liquor ?

A. Well, sir ; it is a question whether they would or not; I don't believe they would.

Q. Do you say to the jury they would not?

A. I don't believe they would.

The testimony of the other experts is substantially to the same effect. This testimony, in our view, was properly received for the purpose of showing the probable effect of the long continued intoxication of Smith—if the jury should believe the testimony tending to show such continued intoxication—in causing a loathing of life and hence suicide. If the suicide was deliberately committed by Smith while not under the influence of intoxicating drinks, the defendants below would not be liable; while if such suicide was caused by the use of intoxicating liquors furnished by the defendants below, they would be. There was no error, therefore, in admitting the testimony.

Objection is made to the refusal of the court to permit certain witnesses to testify that on the afternoon and in the evening of the day on which Smith took poison and killed himself each separately charged him with having embezzled large sums of money due to Fillmore and Poffenbarger, in whose employment Smith had been for a year prior thereto. It is claimed that such testimony would have shown a cause for the suicide and hence was

admissible.   So far as we can see, the only effect of the testimony, if admitted, would have been to divert the attention of the jury from the main question at issue, and the evidence was properly rejected.

The fourth assignment is as to the modification by the court of instructions Nos. 2 and 3, asked on behalf of the defendants below.   It is impossible in this connection to review the instructions at length, but they seem to be adapted to the evidence, and the modification of the instructions complained of appears to have been made to make them conform to the proof.   There is no error in the record and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.