S. S. VAN HORN ET AL. V. STATE OF NEBRASKA, EX REL. JOHN W. C. ABBOTT.

FILED OCTOBER 1, 1895. NO. 7998.

1. **Townships:** COUNTY BOARDS. The distinguishing feature of township organization lies in the application of the principle of local self-government. It is the regulation of purely local affairs by the townships and local officers thereof, and not the constitution of the county board, which distinguishes the township system.

2. ———: SUPERVISORS. Where supervisors are local officers, their number and the manner of their election are subjects connected with township organization, and not solely related to county government.

3. **Statutes:** SUBJECT OF BILL: TITLE OF ACT: CONSTITUTIONAL LAW. The object of section 11, article 3, of the constitution, providing that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title," is to prevent surreptitious legislation. If a bill has but one general object, no matter how broad that object may be, and contains no matter not germane thereto, and the title fairly expresses the subject of the bill, it does not violate this provision of the constitution.

4. ———: ———: ———: ———. Whether or not a bill contains more than one subject is to be determined by examining the substance of the bill. Apparent duplicity in the title alone does not invalidate the act.

Van Horn v. State.

5. **Township Organization:** VALIDITY OF STATUTE. Chapter 28, Session Laws, 1895, providing for township organization, etc., has but one subject, which is clearly expressed in its title.

6. ————: ————. Where different parts of the same statute are in irreconcilable conflict, the last words stand, and those in conflict therewith are disregarded. (*Albertson v. State*, 9 Neb., 429.) Session Laws, 1895, chapter 28, construed, and *held* to provide for seven supervisors in all counties under township organization.

7. **Statutes:** AMENDMENT OF LAWS: REPEAL: CONSTITUTIONAL LAW. That portion of section 11, article 3, of the constitution, providing that "No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed," has no application to acts complete in themselves, and not in their effect simply amendatory. Such complete acts are valid, although they may modify or destroy the effect of previous legislation.

8. **Township Organization:** CONSTITUTIONAL LAW. Section 5 of article 10 of the constitution confers upon the people by vote the power of adopting and discontinuing township organization, but it leaves to the legislature the power of providing the details of such organization.

9. ————: AMENDMENT OF LAW. The legislature may, therefore, amend or change the law in regard to township organization, without referring such change to a vote of the people.

10. **County and Township Officers.** Section 4, article 10, of the constitution, enacting that the legislature shall provide by law for the election of such county and township officers as may be necessary, does not prevent the legislature when it reduces the number of officers from providing that those already elected shall cast lots to determine whose terms of office shall be discontinued; nor does it prevent the legislature from providing for the filling of vacancies provisionally by appointment.

11. **Statutes:** UNIFORMITY OF OPERATION. If a law is general and uniform throughout the state, acting alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, it is not objectionable as wanting uniformity of operation. (*State v. Berka*, 20 Neb., 375.)

12. **Mandamus:** MINISTERIAL OFFICERS: CONSTITUTIONAL LAW. Ministerial officers, upon whom the legislature has sought to impose a duty by statute, may assert the unconstitutionality of that statute as a defense to an application for a *mandamus* to require them to perform the supposed duty.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

The case is stated by the commissioner.

*Samuel Maxwell* and *C. Hollenbeck*, for plaintiffs in error:

The act under consideration is void because the title contains more than one subject. (Sutherland, Statutory Construction, secs. 86–97; *State v. Lancaster County,* 6 Neb., 474; *Trumble v. Trumble,* 37 Neb., 340; *Curch v. City of Detroit,* 31 N. W. Rep. [Mich.], 447; *Davies v. Board of Supervisors,* 50 N. W. Rep. [Mich.], 862; *Ives v. Norris,* 13 Neb., 252; *Holmburg v. Hauck,* 16 Neb., 337; *Touzalin v. City of Omaha,* 25 Neb., 817; *Weigel v. City of Hastings,* 29 Neb., 379; *Northwestern Mfg. Co. v. Chambers,* 58 Mich., 381; *People v. Congdon,* 43 N. W. Rep. [Mich.], 386.)

The act is void, for the reason that it contains several subjects independent of each other which are not embraced within the title.

The constitutionality of the act is challenged upon the ground that it is ambiguous and indefinite to such an extent that it is incapable of enforcement.

The legislation is special, because the act provides five supervisors for some counties and seven for others.

The law repeals a large number of other laws without any reference to them in the title of the act and is therefore invalid.

The act is inoperative and void as to counties now under township organization, because it imposes upon such counties the system of local government provided for by the act without a vote of the people of the county, as provided in section 5, article 10, of the constitution.

The act under consideration practically, and in effect, amends the act of 1879 (Compiled Statutes, 1895, sec. 62, ch. 18), without any reference to it, and should therefore be

declared invalid. (*Trumble v. Trumble,* 37 Neb., 340; *State v. Lancaster County,* 6 Neb., 474.)

The act is objectionable, because it provides for new county officers and provides for their selection by casting lots, thereby amending the laws in relation to appointment.

The board of county supervisors may resist an application for *mandamus* on the ground that the act of the legislature, requiring the performance of the duty sought to be enforced, is unconstitutional. (*State v. Lancaster County,* 6 Neb., 474.)

*George L. Loomis,* also for plaintiffs in error.

*John W. C. Abbott* and *J. E. Frick, contra:*

The law does not violate section 11, article 3, of the constitution, providing that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." (23 Am. & Eng. Ency. Law, 232; *State v. Atlantic City,* 28 Atl. Rep. [N. J.], 427; *Van Husen v. Heames,* 56 N. W. Rep. [Mich.], 22; *Henderson v. State,* 36 N. E. Rep. [Ind.], 257; *Bissell v. Heath,* 57 N. W. Rep. [Mich.], 585; *State v. Mines,* 18 S. E. Rep. [W. Va.], 470; *People v. Taylor,* 56 N. W. Rep. [Mich.], 27; *Gaines v. Williams,* 34 N. E. Rep. [Ill.], 934; *People v. Brooks,* 59 N. W. Rep. [Mich.], 444, 816; *Board of Trustees v. Daniels,* 25 S. W. Rep. [Ky.], 746; *Lynch v. Murphy,* 24 S. W. Rep. [Mo.], 774; *Curtin v. Barton,* 34 N. E. Rep. [N. Y.], 1093; *In re Board of Commissioners of Johnson County,* 32 Pac. Rep. [Wyo.], 850; *Barnhill v. Teague,* 11 So. Rep. [Ala.], 444; *Mills v. Charleton,* 9 Am. Rep. [Wis.], 578; *Commonwealth v. Depuy,* 23 Atl. Rep. [Pa.], 896; *State v. Tucker,* 46 Ind., 355; Black, Constitutional Law, 286; *People v. Mahaney,* 13 Mich., 496; *White v. City of Lincoln,* 5 Neb., 505; *Hamlin v. Meadville,* 6 Neb., 227; *Kansas City & O. R. Co. v. Frey,*

9

30 Neb., 790; *State v. Ream*, 16 Neb., 681; *State v. Page*, 12 Neb., 386; *Dogge v. State*, 17 Neb., 143; *State v. Babcock*, 23 Neb., 128; *Gatling v. Lane*, 17 Neb., 80; *Poffenbarger v. Smith*, 27 Neb., 788; *Bonorden v. Kriz*, 13 Neb., 121.)

The contention of plaintiffs in error that the act repeals the law of 1879 without reference to the government of counties is not tenable. (*Jones v. Davis*, 6 Neb., 33; *State v. Page*, 12 Neb., 386; *Brome v. Cuming County*, 31 Neb., 362; *Warren v. Crosby*, 34 Pac. Rep. [Ore.], 661; *People v. Mahaney*, 13 Mich., 496; Cooley, Constitutional Limitations [5th ed.], 181.)

The following authorities are cited in reply to the contention that the act repeals a large number of different statutes without any reference to them: *Brome v. Cuming County*, 31 Neb., 362; Sutherland, Statutory Construction, secs. 154–156.

As to uniformity of laws, reference is made to the following cases: *State v. Berka*, 20 Neb., 375; *Lancaster County v. Trimble*, 33 Neb., 121.

In reply to the contention that the act is invalid because it effects a change in township organization without submitting the question to the legal voters, under section 5, article 10, of the constitution, the following authorities are cited: *Board of Supervisors v. Heenan*, 2 Minn., 330; *Bank of the Republic v. Hamilton*, 21 Ill., 53; *People v. Brislin*, 80 Ill., 423.

The law is not invalid because it provided for the casting, or drawing, of lots to determine which one of the several supervisors should temporarily represent any given district that might be established from two or more townships until the following general election. (*State v. Douglass*, 7 Am. Rep. [Wis.], 87; *Prince v. Skillin*, 36 Am. Rep. [Me.], 325; 19 Am. & Eng. Ency. Law, 562.)

The act is not void for indefiniteness. (*In re Frey*, 18 Atl. Rep. [Pa.], 478; *Board of Supervisors v. Heenan*, 2 Minn., 339.)

The plaintiffs in error have no such rights involved as entitle them to question the validity of the act. (*People v. Salomon*, 54 Ill., 39; Merrill, Mandamus, sec. 65.)

IRVINE, C.

Chapter 28 of the Session Laws of 1895, among other radical changes with regard to counties under township organization, fixes the number of supervisors in such counties at seven, and in counties now having township organization requires the county clerk to call a special meeting of the supervisors for the purpose of dividing the county into suitable supervisor districts, and choosing supervisors for such districts. After making such division the supervisors are required, if there be more than one supervisor in any district so formed, to cast lots among themselves and so select one to remain supervisor for such district; and if there are any vacancies, the board appoints supervisors to fill them. The county clerk of Dodge county called a meeting of the board in pursuance of the act, and the board when assembled refused to perform the duties imposed upon it, on the ground that the act was in violation of the constitution and void. The board at the same time instructed the county attorney to take the proper steps to have the constitutionality of the act determined, and the county attorney therefore applied to the district court for a writ of *mandamus* to compel the board of supervisors to meet and divide the county into seven supervisor districts, as required by the act in question. The supervisors demurred to the petition for the writ. The district court overruled the demurrer and allowed the writ. From this judgment the respondents prosecute error.

The record presents only one general question—the constitutionality of the act of 1895. In order to an understanding of the case, a brief review of the legislation on the subject is necessary. Section 5 of article 10 of the constitution requires that "The legislature shall provide

by general law for township organization, under which any
county may organize whenever a majority of the legal
voters of such county voting at any general election shall
so determine; and in any county that shall have adopted a
township organization the question of continuing the same
may be submitted to a vote of the electors of such county
at a general election in the manner that shall be provided
by law." Attempting to perform the duty imposed upon
the legislature by this provision, there was passed in 1877
"An act to provide for township organization." This act,
outside of its professed object, contained many provisions
in regard to county government in general, and in regard
to taxation and revenue, and was declared unconstitutional
in *State v. Lancaster County,* 6 Neb., 474, for the reason
that the act embraced subjects not indicated by the title,
and that its various provisions were so interdependent that
the portion indicated by the title could not be given sepa-
rate effect. In 1879 there was passed "An act concerning
counties and county officers." This act presented a com-
plete scheme of county government, and contained special
provisions for the government, not of townships, but of
counties under township organization, although there was
at that time, by reason of the failure of the act of 1877,
no means of accomplishing township organization. The
validity of the act of 1879 was presented to the court in
the case of *State v. Page,* 12 Neb., 386, and the court held
that the act embraced but one general object which was
fairly expressed by the title, and that the act was, there-
fore, not in conflict with that portion of section 11, article
3, of the constitution, providing that " No bill shall contain
more than one subject, and the same shall be clearly ex-
pressed in its title." So the law rested until 1883, pro-
viding for county government in counties under township
organization, but being ineffective as to that portion of the
law for want of a law authorizing and providing for
township organization. By chapter 36, Session Laws,

1883, a scheme of township organization and government was finally enacted under the title of "An act to provide for township organization, to divide counties under township organization into supervisor districts, to define the rights, powers, and liabilities of towns, the duties, and compensation of the officers thereof." This act, with some amendments, has remained in force until the present year. The act here in question (Session Laws, 1895, ch. 28) has for its manifest object to supersede the act of 1883, by providing a new and complete plan of township organization and government, and by expressly repealing the act of 1883. Further statements in regard to the nature of these various acts can more conveniently be made in connection with the several arguments advanced.

It is urged that the title to the act of 1895 is double; that it contains more than one subject; that the bill relates to both township and county government, two entirely separate and distinct subjects, and that both the title and the act indicate this duplicity. The title of the act is as follows: "An act to provide for township organization, to divide counties under township organization into supervisor districts, to define the rights, powers, and liabilities of towns, the duties and compensation of the officers thereof, and to provide for the election of town officers, and for the election of supervisors, and the term of office of supervisors to be elected and chosen in the several supervisor districts into which the county is to be divided when governed by township organization, and to repeal sections one (1) to sixty-two (62), both inclusive, of article four (4), chapter eighteen (18), Compiled Statutes of Nebraska, 1893." An analysis of the act discloses that it embraces the whole subject of township organization and government, but that it does not affect in any manner the government of the county as such, except by changing the law in regard to the constitution of the board of supervisors. County government and the duties of the board of

supervisors in county affairs remain as they were provided
by the act of 1879. In connection with and incidental
to the main provisions of the act we do, however, find cer-
tain provisions which it may be said affect the county as a
whole. Under the law of 1883 each township selected a
supervisor, with certain provisions relating specially to
cities. Under the present law, laying out of view for the
moment a complication to be hereafter noticed, the county
is to be divided into seven supervisor districts, each one
choosing a supervisor. In addition to this the act contains
a special provision (sec. 65) with regard to the duties of
supervisors. This section relates not to their duties as
members of the county board, but to their duties as local
officers, giving to each special charge of the expenditure of
money appropriated for roads, bridges, and culverts within
his supervisor district, and requiring each supervisor to
account to the board for all money so received and dis-
bursed. It may, by the way, be here remarked that by
virtue of this provision the supervisors remain local officers
charged with local duties, and that, therefore, the conten-
tion of the respondents that this act deprives them of all
such powers and duties, and makes them merely county
commissioners, is unfounded. The act also provides for the
method of accomplishing a change from the commissioner
system to township organization, and also contains provis-
ions, being those directly brought into controversy in this
action, for the purpose of conforming counties already
working under township organization to the provisions of
the new law. In considering the act it is necessary to
have constantly in mind what is really meant by township
organization. We have in this state two systems of gov-
ernment within the county. By one of these systems,
designated for convenience "the commissioner system,"
the government of the county at large and of its subdi-
visions is entrusted to a board of county commissioners,
who, together with certain governmental agents subordinate

to them, conduct all the affairs of the county, local and general.   Under the other system, called "the township system," the county is subdivided into townships, or towns. Each of these towns constitutes a body corporate.   The purely local affairs are entrusted to the town meetings of the several towns, or to township officers selected by the towns, while the general affairs of the county are conducted by a board constituted of the various township supervisors.   The essential feature of township government lies in the application of the principle of local self-government. It is not the constitution of the county board, but the local government of the townships which marks the distinction between the two forms of government.  The constitution of the supervisors into a county board is accidental to the system, but by no means essential thereto.   Township government, within the meaning of the constitution, might well be provided for as in the act of 1883, or in the act of 1895, but without the supervisors or other township officers having any functions in the government of the county at large.   Indeed, the writer recalls that in the state of Pennsylvania just such a system of township government prevails, the townships having their local officers, but the county being governed at large by a board of commissioners, constituted very much as the boards existing in our counties in which the commissioner system prevails. Bearing in mind this distinction, we think it will be apparent at once that the act of 1895 has but. one main and general subject, to-wit, the organization of townships and the government thereof.   The other provisions of the act have direct reference to this main subject, are cognate therewith and incidental thereto.   The government of the county at large is not affected.   The board of supervisors has the same powers and the same duties as the county board had before the passage of the act.   Only the number of supervisors and the manner of their election are changed.   As we have said, the organization of the super-

visors into a county board is purely fortuitous, for convenience merely. These local officers constitute the county board, but they are still local officers, and their number and the manner of their election are properly connected with the subject of the local government. For the purposes of this discussion it may be assumed that the title of the act may state several subjects; but this is not the question. The constitutional inhibition is against the bill's containing more than one subject. The title must clearly express the subject, but provided the bill itself contains but one subject, and this subject is clearly expressed in the title, it matters not although the title, read independently of the bill, may seem double. We, therefore, look to the bill itself to ascertain whether or not it contains more than one subject, and having ascertained that it contains but one, then we look to the title to see if that subject is clearly expressed therein. If so, the constitutional provision we are here dissussing is not violated. Tested by this rule, we have no hesitation in saying that the subject-matter of this act is single, and that while a more comprehensive and shorter title might have been sufficient to indicate the contents of the bill, still the title which the legislature adopted does clearly indicate every essential feature of the act.

In view of the numerous cases in which this court has been called upon to apply the constitutional provision referred to, we might dismiss this branch of the case here; but, in view of the large number of counties affected by the decision, and in view of the elaborate argument based upon authority which has been advanced on behalf of the respondents by counsel of long forensic and judicial experience, we think it proper to refer in this connection to the cases in this state which have been cited. The desirability of not unreasonably extending an opinion, which must necessarily be somewhat long, forbids our referring to the decisions of other courts, especially as almost every conceivable phase of the question has received an adjudication in this court.

In most of the cases where acts of the legislature have been declared to be in conflict with this provision of the constitution, while in some of them general language may be found suggesting duplicity of subject, it will be found that the decision was based not upon that duplicity, but upon the fact that the legislature had adopted a title which was too restrictive and did not clearly express the subject of the act. Such cases are the following: *Smails v. White*, 4 Neb., 353; *White v. City of Lincoln*, 5 Neb., 516; *State v. Lancaster County*, 6 Neb., 474; *Burlington & M. R. R. Co. v. Saunders County*, 9 Neb., 507; *Ives v. Norris*, 13 Neb., 252; *Holmberg v. Hauck*, 16 Neb., 337; *Touzalin v. City of Omaha*, 25 Neb., 817; *Weigel v. City of Hastings*, 29 Neb., 379. In some of the foregoing cases it was, however, unmistakably intimated that the act was not bad for duplicity and would have been valid under a broader title. In *State v. Lancaster County*, 17 Neb., 85, while the syllabus refers only to the title, it is clear from the opinion that the court deemed the act itself bad for duplicity; but the act there under consideration provided for the registry, sale, leasing, and general management of school lands, and also sought to incorporate therein a repeal of an act providing for the repayment of taxes levied on lands the legal title of which was in the state. Here were two subjects clearly. The repeal of the law in relation to repaying taxes was not incidental to the main purpose of the act. It was not cognate therewith, nor did it in any manner relate thereto. It was wholly separate and distinct from the main purpose. In *Trumble v. Trumble*, 37 Neb., 340, an act of 1889 relating to various matters connected with decedents' estates was held void, among other reasons, for duplicity of subject; but that act had for its ostensible purpose the amendment of only two sections of the law in regard to decedents, and, therefore, the professed subject of the act extended only to such matters as were germane to those two sections. Every subject not so germane was, therefore, a separate

subject. We conceive the rule to be that the constitutional provision does not restrict the legislature in the scope of legislation. It does not prohibit comprehensive acts, and no matter how wide the field of legislation the subject is single so long as the act has but a single main purpose and object. Thus, we would have no doubt of the power of the legislature by a single act to provide a new and complete Code of Civil Procedure, but if the legislature should undertake in an act whose main purpose should be, for instance, to provide for supersedeas bonds, to also provide for the issuing of original summonses, or the effect of a demurrer, we would have no hesitation in saying that such an act contained more than one subject. The act under consideration in *Trumble v. Trumble* was of the latter character, and if this idea was not clearly expressed in the opinion, the writer, who was also the author of that opinion, owes an apology to the profession, and can only say that the general language there used should be read as applied to the questions presented in that case. In none of the cases already cited, and in none decided by this court, has it ever been held that the constitution required any subdivision of legislation into distinct acts, each having reference to only so much as might practicably form a single act. On the contrary, it has always been said that the legislature might choose for itself its manner of legislation, and that an act, no matter how comprehensive, would be valid provided a single main purpose was held in view, and nothing embraced in the act except what was naturally connected with and incidental to that purpose. Thus, in *State v. Page*, 12 Neb., 386, the act of 1879, already referred to, entitled "An act concerning counties and county officers," was held to contain but one subject because it had "but one general object," fairly expressed in the title, although this act contained a complete scheme of county government, and so operated as to materially change the law on other subjects related thereto. In *Bonorden v. Kriz*, 13 Neb., 121, the

court considered an act entitled "An act to exempt home-
steads from judicial sale," and held that a provision in that
act that a conveyance or incumbrance by the owner would
be of no validity unless the husband and wife concurred
in and signed the same joint instrument was valid and
within the general subject of the act.   It might be remarked
that this act, in connection with its main features, provided
for the change of homesteads and for their descent.   The
court evidently regarded these features within the same gen-
eral purpose as the exemption of homesteads from judicial
sale.   In *White v. City of Lincoln*, 5 Neb., 505, it was said
by MAXWELL, J.: "The object of this constitutional pro-
vision is to prevent surreptitious legislation by incorporating
into bills obnoxious provisions, which have no connection
with the general object of the bill and of which the title
gives no indication.   It will be sufficient, however, if the
law have but one general object which is fairly expressed
in the title of the bill."   In *Poffenbarger v. Smith*, 27 Neb.,
788, it was held that those provisions of what is known as
the "Slocumb Law," subjecting a liquor seller to liability
for damages sustained in consequence of the sale of intoxi-
cating liquors, were "in harmony with the object of the
act," and valid.   In *Kansas City & O. R. Co. v. Frey*, 30
Neb., 790, there was involved the question of the consti-
tutionality of an act giving laborers and material-men a
lien upon a railway for material furnished and labor per-
formed thereon.   It was held that the various provisions
of that act constituted a single subject of legislation, MAX-
WELL, J., saying, "The object of the framers of the con-
stitution was not to embarrass legislation by making laws
unnecessarily restrictive in their scope and operation, and
thus greatly multiply their number, but it was intended
that a proposed measure should stand upon its own merits,
and that the several members of the legislature should be
apprised of the purpose of the act when called upon to
support or oppose it.   In other words, members were pro-

hibited from joining two or more bills together in order
that the friends of the several bills may combine and pass
them.    It was never designed to place the legislature in a
strait-jacket and prevent it from passing laws having but
one object under an appropriate title." In *Hopkins v. Scott*,
38 Neb., 661, it was held that chapter 50, Session Laws,
1891, providing for the deposit in banks of state and county
funds, had but one subject, although relating to both state
and county moneys, the general subject being the custody
of public funds.    We think these cases plainly indicate the
test we have endeavored to express and that by that test
this act is not bad for duplicity and the title expresses its
subject.

2. It is urged in the second place that the act creates a
new office of county supervisors, and defines the powers and
duties of county boards, and that these subjects are not ex-
pressed in the title.    These questions have been incidentally
disposed of in considering the first objection.

3. Next, it is argued that the act is indefinite and in-
capable of execution, because, first, it provides for only five
supervisors in counties having one city of over 1,000 inhab-
itants, and this provision is in conflict with other parts of
the act, and, second, that there is no provision for counties
having more than one city of over 1,000 inhabitants.    Sec-
tion 4 of the act is as follows: "On the second Tuesday
after such election adopting township organization in any
county the county commissioners of the county shall meet
at the county seat of such county and shall forthwith, and
within not more than three days from and after the first
day of meeting, divide such county into seven districts to
be known as supervisors districts; such districts to be di-
vided as near as possible with regular boundary lines and
in regular and compact form and shape, and each district
shall as near as possible have the same number of inhabit-
ants as any other district; but no township shall be divided
by any such district; *Provided*, That in counties having

cities over one thousand inhabitants, and more inhabitants than the average outlying districts, the county commissioners shall add enough contiguous territory to such city so that the inhabitants in such city and contiguous territory shall equal the inhabitants of two of the other districts, and when so divided such district in which such city is located shall elect two supervisors to be elected at large within such district; *Provided further*, That if a county is divided with such a city district, then and in such event the balance of the territory shall only be divided into three districts, and such city district shall receive number as hereinafter provided; *Provided further*, That if any such city has more than the requisite inhabitants for two districts, then and in such event sufficient outlying territory may be added to such city to make three districts. The supervisors in such city districts shall be elected at large, and the balance of that territory outside of such city districts shall be divided so as to create seven districts including such city districts." (Compiled Statutes, 1895, sec. 4, art. 4, ch. 18.)    There is certainly a conflict between the proviso of this section requiring in counties with city districts that the remainder of the territory shall be divided into three districts, and other portions of the act.    It is suggested in argument that this state of affairs arose from the fact that the bill as originally drawn provided in all cases for only five supervisors; that during its progress in the legislature it was amended so as to provide for seven, but in this one case the proper amendment was not inserted. However this may be, we could not amend the act so as to make it conform with the unexpressed intent of the legislators.    But in *Albertson v. State*, 9 Neb., 429, and *Ryan v. State*, 5 Neb., 276, it was held that where there is an irreconcilable conflict between different sections, or parts of the same statute, the last words stand, and those in conflict therewith are repealed.    By the last sentence of section 4 it is provided that supervisors in such city districts

"shall be elected at large and the balance of that territory outside of such city districts shall be divided so as to create seven districts including such city districts." By section 5 it is made clear that where a city is entitled to more than one supervisor, it shall for the purpose of subdivision be deemed two districts, because that section provides: "When the county has been divided as in the preceding section provided, the county commissioners shall at once, upon such division, proceed to number such districts from one to seven, and they shall in case of a city district as contemplated in the preceding section, give such city district two or more numbers, one odd and one even number." Section 7 provides that county commissioners of a county having adopted township organization shall be assigned to the supervisor district in which each resides, "and the three shall forthwith appoint four supervisors to fill the vacancies in the other four supervisors districts." Section 8 provides that after the supervisors qualify "they shall at once organize by electing one of the seven supervisors as chairman." It is plain from these later provisions that the legislature contemplated that there should be in all cases seven supervisors, and these provisions being therefore in conflict with that provision of an earlier section, seeming to provide for five supervisors in certain cases, the rule in *Albertson v. State* requires us to reject the earlier provision, and thus give effect to the manifest final intent of the legislature. As to the objection that no provision is made for counties having more than one city of over 1,000 inhabitants, it is sufficient to say that the general provisions of section 4 in regard to equalizing the number of inhabitants in each district, especially the qualification making the special provision in regard to city districts applicable only where such city has more inhabitants than the average outlying districts, provide adequately for the case contemplated. Thus, assuming that a county has a population of 21,000, the average number of inhabitants for supervisor districts

would be 3,000, and no city would fall within the proviso of section 4 unless it had more than 3,000 inhabitants. Suppose there were in such a county two cities, one of 4,000 and one of 5,000 inhabitants. To the city having 4,000 inhabitants would be added sufficient contiguous territory to include 2,000 additional, and there would thus be formed a double district entitled to two supervisors. To the city having 5,000 inhabitants would be added sufficient contiguous territory to add another thousand, and this, too, would form a double district. There would thus be carved out of the county two double districts, each having 6,000 inhabitants. The remainder of the county would have 9,000 inhabitants, and would be divided into three districts. Such is the unmistakable construction of section 4, and it fully meets the objections urged against it.

4. It is contended that the act lacks uniformity, and is therefore obnoxious to that provision of the constitution prohibiting special legislation in certain cases. This argument is based on the same grounds as the preceding, and what has already been said disposes of it.

5. The next contention is that the act repeals and amends a large number of statutes without any reference whatever to the statutes amended or repealed, and that it is, therefore, violative of that portion of section 11, article 3, of the constitution, providing that "No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." The answer to this argument is that the act is one complete in itself, covering the whole subject to which it relates, that it is competent for the legislature to pass a new act complete in itself, and the fact that such act modifies, changes, or destroys the effect of other statutes does not render it in conflict with the constitution. (*State v. Whittemore*, 12 Neb., 252; *State v. Ream*, 16 Neb., 681; *Stricklett v. State*, 31 Neb., 674; *Smails v. White*, 4 Neb., 353; *Sovereign v. State*, 7 Neb., 409.) While the manner

in which the rule was applied in the last case cited may be open to criticism, we think the test afforded by that rule, and as stated in all the cases, is a safe and proper one.    As said by Judge Cooley in *People v. Mahaney*, 13 Mich., 481, to require whenever a new statute is passed that all prior statutes modified by it by implication should be re-enacted and published at length, would require a large portion of the whole code of laws to be republished at every session, and parts of it several times over, until from the mere immensity of material it would be impossible to tell what the law is, and would also render such a statute obnoxious to other provisions of the constitution relating to the subject of laws and their titles.    "An act complete in itself is not within the mischief designed to be remedied by this provision and cannot be held to be prohibited by it without violating its plain intent."    It is true, as held in *Smails v. White, supra,* that it matters not whether the new statute assumes to be amendatory or not.    It is within the inhibition if it is in effect amendatory, but this rule applies only to acts either professedly or in effect simply amendatory and to acts incomplete in themselves.    To complete acts our constitution has no reference and they must prevail as against earlier legislation in conflict therewith.

6. It is said that in so far as the act relates to counties already under township organization, it is void, because it changes the organization of the county without submitting the question to a vote of the electors as required by section 5 of article 10 of the constitution.    This section we have already quoted.    It requires the legislature to provide for township organization and then provides, in effect, that a majority of the legal voters of a county at a general election may adopt such organization, and, in a manner to be provided by law, may vote upon the question of continuing or discontinuing the same.    In other words, the constitution gives to the voters of the county the right to determine whether or not township organization shall prevail;

but it leaves to the legislature the authority to provide the details of township government.   The legislature, without submission to the people, may provide any system of township organization it sees fit, and consequently, having provided such a system, it may amend it, or it may repeal it altogether, provided it enacts a new system to take its place. The *referendum* provided by the constitution is merely upon the general question of adopting or continuing township organization.   The details of township government are for the legislature, and if the legislature sees fit to so change the method of township government that the voters of a county having adopted township goverment do not desire to continue it under the new method, they still have the means through the *referendum* given by the constitution of discontinuing that organization.   This is all that the constitution requires.

7. The next argument falls for the most part within what has already been said in regard to the amendatory character of this act, but suggests another question which requires separate treatment.   It is that the act, in requiring supervisors who live in the same district to cast lots to ascertain who shall remain in office, creates new county officers, and provides for their selection by lot instead of election, as required by article 10, section 4, of the constitution.   The answer to this is, that no new officers are elected by casting lots.   The officers required to do so have already been elected.   The casting of lots only determines which one of those already elected shall cease to be an officer, and it is not contended that the legislature has no power to discontinue the office.   So far as the act provides for appointments, in case there are no supervisors within the district, it is merely for the purpose of provisionally filling the office until an election can be had.   Provisions for such temporary appointments exist in regard to many offices, and their validity is not now open to question.

8. Finally, it is suggested in argument that the act is
10

invalid because it provides that there shall be but one justice of the peace for each township. So far as this argument is based upon the ground that it operates as an amendment of the election law providing for two justices in each precinct, it has been met by what has already been said. But it is argued in addition to this that such a provision is void for want of uniformity, under section 19, article 6, of the constitution, providing that all laws relating to courts shall be general and of uniform operation. We might dispose of this latter branch of the case upon the ground that the provision referred to, if void, is not so interwoven with the rest of the act as to invalidate the whole act. But for the purpose of setting the whole question at rest we prefer to treat the argument upon its merits. The case is, in this aspect, directly in line with that of *State v. Berka*, 20 Neb., 375, holding that a statute limiting the number of justices in cities of the first class to three is not obnoxious to the constitutional provision referred to. It was there said that if a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, it is not objectionable as wanting uniformity of operation. This law applies to all counties adopting township organization, and all counties may do so. It is, therefore, of uniform operation.

9. We have treated this case as properly involving the constitutionality of the act in question, although counsel for the relator contends with vigor that, irrespective of that question, the writ should issue, and earnestly asks the court to pass upon the question as to whether a ministerial officer, having no personal interest, can justify his refusal to act under a statute on the ground that the statute is in conflict with the constitution. We had thought it settled, at least since the decision of *Marbury v. Madison*, 1 Cranch [U. S.], 137, that the constitution is the supreme law, binding

upon the legislature, as well as upon every citizen, and that no act of the legislature repugnant to the constitution can become a law for any purpose. A different doctrine has of late been revived, and it would even seem has received acceptance in a modified form by some courts. There can, however, in our mind, be no escape from these propositions, that the constitution is the fundamental law, that an act of the legislature repugnant thereto is not merely voidable by the courts, but is absolutely void and of no effect whatever. It is no law, and binds no one to observe it. The officers of this state are sworn to support the constitution. Where a supposed act of the legislature and the constitution conflict, the constitution must be obeyed and the statute disregarded. Ministerial officers are, therefore, not bound to obey an unconstitutional statute, and the courts sworn to support the constitution will not by *mandamus* compel them to do so. It is, therefore, a complete answer to an application for such a writ that the statute seeking to impose the duty is violative of the constitution. But the courts themselves will enforce a statute unless it is clearly repugnant to the constitution, and in discharging the functions of their offices ministerial officers should, of course, exercise the greatest caution on such questions. A doubt as to the validity of a statute would not justify them in disregarding it. The peace of the community, the orderly conduct of government, require that only in clear cases of unconstitutionality should they refuse obedience to legislative acts. They always disregard them at their peril; but when they do disregard them, and the question is presented to the court as to whether or not obedience will be compelled, the question of the validity of the act is presented, and obedience will not be compelled if the act is unconstitutional, because in that case it is no law and imposes upon no one any duty. Of the cases cited in support of a contrary view two are found in our reports, but they are not authority for the contention of counsel. One is

*State v. Douglas County*, 18 Neb., 506. In that case the court refused to pass upon the constitutional question because the case was submitted on the eve of the election to which the case related and practically without argument. The other case is *State v. Stevenson*, 18 Neb., 417. The court there did pass on the constitutional question, and then added, what was clearly under the circumstances *obiter*, that an act of the legislature should be respected until declared invalid by the judiciary in a proper legal proceeding. This language must have been used without due reflection. If an act must be respected until its invalidity is declared by the judiciary in a proper proceeding, then the constitution is utterly ineffectual. Such a proceeding can never arise until some one refuses obedience to the act.

JUDGMENT AFFIRMED.