## PEET STOCK REMEDY CO. et al. v. McMULLEN, Governor of Nebraska, et al.*

Circuit Court of Appeals, Eighth Circuit.
April 15, 1929.

No. 8203.

John W. Cooper, of Omaha, Neb., for appellants.

Lloyd Dort, of Lincoln, Neb. (O. S. Spillman, of Norfolk, Neb., on the brief), for appellees.

Before VAN VALKENBURGH and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is an appeal from a judgment dismissing the bill of appellants, plaintiffs below, for want of equity, and dissolving a restraining order theretofore issued.

The alleged facts are substantially as follows: The plaintiffs are engaged in the manufacture and sale of live stock remedy products and are registered manufacturers under the law of the state of Nebraska. The sales and distribution of said products extend throughout Nebraska and into other states and foreign countries. Said live stock remedies are efficacious, highly regarded by live stock growers, and are in constant use and general demand. Defendant McMullen is the duly elected Governor of the state of Nebraska and is charged with the duty of executing the laws of the state and of supervising and directing the work of the department of public welfare. Defendant Frost is the secretary of the department of public welfare. The Legislature of the state of Nebraska in 1927 passed an act (chapter 167, Session Laws of 1927) which included "Division 19, Practice of Veterinary Medicine and Surgery." The title to the act is: "An Act relating to the public health, convenience

*Rehearing denied June 29, 1929.

and welfare; providing an uniform system for the examination and licensing of persons to practice chiropody, chiropractic, dentistry, embalming, medicine and surgery, nursing, optometry, osteopathy, pharmacy and veterinary medicine; providing the duties of licensees thereunder; providing for the revocation of licenses for cause; prescribing penalties for the violation of the several provisions of this act," and to repeal certain acts. The act provides amongst other things:

"Section 128. For the purpose of this article the following classes of persons shall be deemed to be in the practice of veterinary medicine and surgery:

"1. Persons who publicly profess to be veterinarians or who publicly profess to assume the duties incident to the practice of veterinary medicine and surgery.

"2. Persons who for a fee, salary or reward paid directly or indirectly, either to himself, or to some other person, diagnose diseases, treat or advise treatment of diseases of domestic animals, or administer chemical, pharmaceutical or biological, therapeutic or diagnostic agents or prescribe the same, correct or attempt to correct diseased conditions of domestic animals or in any way alter their physical condition by surgical, mechanical or other physical means, or any person who shall use any degree or part of a degree conferred by any College of Veterinary Medicine."

Sections 129 and 130 set forth the requirements for obtaining a license to practice. Section 131 in part reads as follows: "* * * Provided further that nothing in this act shall be construed to prevent any person from advising or assisting any other person gratuitously in the care or treatment of his or her domestic animals; * * * provided further that nothing in this act shall be construed as preventing registered manufacturers of live stock remedies, mineral foods and serums, or their representatives from selling or explaining as to the use of their products; provided further, that nothing in this act shall be construed as applying to county extension agents while acting in their official capacity; provided further, that nothing in this act shall prohibit regular commissioned veterinarians in the United States Army, or veterinarians of the United States Bureau of Animal Industry or the Nebraska Department of Agriculture from acting in their official capacity within the state."

Violations of the act are punishable by fine and imprisonment.

Other alleged facts are: It is necessary to the successful carrying on of the business of plaintiffs in Nebraska that they or their representatives in making sale of said live stock remedies should give printed instructions and information to purchasers of said remedies, diagnosing or attempting to diagnose the diseases of their domestic animals, and to advise and assist the owners of domestic animals in the care and treatment of such animals in correcting their diseased condition. The making of such diagnoses and the giving of such service and assistance by plaintiffs and their representatives without first obtaining a license under said act of the Legislature of the state of Nebraska will subject plaintiffs and their representatives to prosecution, fine, and imprisonment.

The bill further alleges that said act of the Legislature of the state of Nebraska, in thus requiring plaintiffs and their representatives to take out licenses under said act as a condition to the carrying on of their said business, deprives the plaintiffs of their property without due process of law, and is violative of the Fourteenth Amendment of the Constitution of the United States; that the act is violative of the Fourteenth Amendment in that it discriminates against plaintiffs and their representatives by requiring them to take out licenses while allowing other classes, e. g., persons acting gratuitously, county extension agents, commissioned veterinarians of the United States Army, or of the United States Bureau of Animal Industry, or of the Nebraska department of agriculture, to do the same acts without first obtaining a license; that the act is violative of section 18, article 3, of the Constitution of the state of Nebraska, which in part provides as follows:

"The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any * * * association or individual any special or exclusive privileges, immunity * * * whatever;" and is further violative of section 14, article 3, of said State Constitution, which provides in part as follows:

"No Bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The bill further alleges that defendants threaten to prosecute plaintiffs and their representatives under said act if they or any of them continue to make diagnoses of the diseases of domestic animals or give advice concerning the treatment of said diseases in connection with the sale of their live stock remedies without first having procured licenses under said act.

The prayer of the bill is that the act be declared unconstitutional and void, and that the defendants be temporarily and permanently enjoined from enforcing the same.

A restraining order was issued, but, as above stated, it was dissolved when the bill was dismissed.

We are met first of all by a motion of appellees to dismiss the appeal, on the ground that this court has no jurisdiction, the contention being that the appeal should have been taken direct to the Supreme Court. The following facts pertinent to the motion appear in the record:

August 19, 1927, on an application for an interlocutory injunction and a restraining order, a restraining order, was issued "until further order of the court." The cause was set for hearing August 29th.

August 29, 1927, the cause coming on for hearing on the application for an interlocutory injunction, the hearing was continued to a date to be agreed upon. The restraining order was continued in force.

October 14, 1927, an amended bill was filed.

November 5, 1927, a motion to dismiss the amended bill was filed.

April 14, 1928, the motion to dismiss was granted. Leave was granted to file an amended bill within 20 days.

May 1, 1928, the motion to dismiss was sustained. The bill was dismissed. The restraining order was dissolved. Plaintiffs elected to stand on their amended bill.

June 9, 1928 (in Circuit Court of Appeals), an application for supersedeas was denied. An application for an injunction pending the appeal was denied.

Since the passage of the Act of February 13, 1925 (43 St. 936, 938), an appeal from a decree allowing or disallowing an injunction may no longer be taken from the district court direct to the Supreme Court on the sole ground that constitutional questions are involved, unless the case arises under section 266, Judicial Code, as amended by that act (28 USCA § 380). Ex parte Buder, 271 U. S. 461, 46 S. Ct. 557, 70 L. Ed. 1036.

*Does the case at bar arise under section 266 Judicial Code as amended?*

In Moore v. Fidelity & Deposit Co., 272 U. S. 317, 47 S. Ct. 105, 71 L. Ed. 273, a case somewhat similar to the case at bar, final decree for an injunction was entered by the District Court. Appeal was taken direct to the Supreme Court. In dismissing the appeal, that court said (page 320 [47 S. Ct. 106]):

"In the case at bar there was an attack upon the order of the insurance commissioner 'upon the ground of unconstitutionality' within the meaning of section 266. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 292 [43 S. Ct. 353, 67 L. Ed. 659]. It may be assumed that the order was action of an administrative board within the meaning of that section. Compare Fidelity & Deposit Co. v. Tafoya, 270 U. S. 426 [46 S. Ct. 331, 70 L. Ed. 664]. But the prayer for a preliminary injunction was not pressed; nor was there any request that the case be heard by a court consisting of three judges, which would have been necessary under section 266 if the prayer had been pressed."

Speaking of the Act of February 13, 1925, the court said (page 321 of 272 U. S. [47 S. Ct. 106]):

"The general purpose of the Act of 1925 was to relieve this Court by limiting further the absolute right to a review by it. There is nothing in the provision added by that Act to section 266 which indicates a purpose to extend the application of that section—either as to the requirement of three judges or as to the right to a direct appeal—to a case in which an interlocutory injunction was not actually applied for. The occasion for the provision was considered in the Buder Case. It authorizes a direct appeal to this Court from the final decree of the district court only where an application was made for an interlocutory injunction and the case was heard before three judges."

Smith v. Wilson, 273 U. S. 388, 47 S. Ct. 385, 71 L. Ed. 699, was also a case under section 266, Judicial Code. The bill prayed both for an interlocutory and a final injunction. No application for a preliminary injunction was pressed, but the evidence was taken before a special master, and final hearing was had before three judges. The bill was dismissed. Direct appeal was taken to the Supreme Court. In dismissing the appeal that court said (page 391 [47 S. Ct. 386]):

"We conclude that the section as amended does not require a court of three judges on the final hearing unless an application for preliminary injunction is pressed to a hearing. In that case, an appeal either from the determination on the preliminary application or from the final decree may be taken directly to this Court. The plaintiff is thus given an election. He may either make application for an interlocutory injunction, which must be heard by three judges, in which case the final hearing must be before a like court with appeal directly to this Court, or he may not

press an application for an interlocutory injunction, in which case the final hearing may be before a single judge, whose decision may be reviewed by the circuit court of appeals and this Court under other applicable provisions of the Judicial Code. Here there was no application for an interlocutory injunction and hence no necessity for a final hearing before three judges, although it may not have been erroneous for three judges to sit, a question we do not find it necessary to decide. There is therefore no jurisdiction in this Court to hear the appeal, which must accordingly be Dismissed."

Clark v. Poor, 274 U. S. 554, 47 S. Ct. 102, 71 L. Ed. 1199, was also a case under section 266, Judicial Code. The bill prayed for both a preliminary and a final injunction. The application for preliminary injunction was brought on for hearing before three judges, and, the defendants having already filed their answer, it was stipulated that the cause should be submitted on the merits for final decree. The bill was dismissed and the injunction denied. Direct appeal was taken to the Supreme Court. That court held the appeal was properly taken, since the application for a temporary injunction had been applied for and pressed to a hearing before three judges.

In view of the facts in the case at bar, that no application for a preliminary injunction was pressed, no request for three judges was made, and no hearing was had before three judges, we are of opinion that under the rulings in the cases above cited the appeal was properly taken to this court. Motion to dismiss the appeal is accordingly denied.

■ Turning to the merits: The contention that the Nebraska act is violative of the provisions of both the state and federal Constitutions, on the ground of arbitrary discrimination, and is also violative of the "due process" clause of the federal Constitution, cannot in our judgment be sustained.

Exemption of certain classes of parties from the provisions of the statute does not necessarily render the statute violative of the constitutional guaranties relied upon. Classification is not arbitrary discrimination if the classification rests upon a reasonable basis of difference. The exemption of parties giving advice gratuitously was plainly inserted so as not to preclude the mutual exchange of opinions and advice between neighbors, laymen engaged to a greater or less extent in raising and caring for domestic animals. Such parties are widely differentiated from those who hold themselves out as having special knowledge and who charge for imparting the same. The statute is intended to regulate this latter class. The exemption of county extension agents while acting in their official capacity, and regular commissioned veterinarians of the United States Army or of the United States Bureau of Animal Industry or the Nebraska department of agriculture, rests also upon a reasonable basis of distinction. The fact that such parties hold their official positions affords a presumption that they possess qualifications in their respective lines of activity; and the advice they might give would presumably be given in discharge of their official duties. The statutory exemption is expressly limited to these parties while acting in their official capacity.

The foregong conclusions as to classifications and exemptions are, we think, amply supported by the rulings in the case of Watson v. Maryland, 218 U. S. 173, pages 179, 180, 30 S. Ct. 644, 647 (54 L. Ed. 987). In that case the court in speaking of a similar statute said:

"Before a law of this kind can be declared violative of the Fourteenth Amendment as an unreasonable classification of the subjects of such legislation because of the omission of certain classes, the court must be able to say that there is 'no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' * * *

"* * * The selection of the exempted classes was within the legislative power, subject only to the restriction that it be not arbitrary or oppressive and apply equally to all persons similarly situated."

See, also, Williams v. State of Arkansas, 217 U. S. 79, 30 S. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865, in which the court reviews numerous cases of similar character.

■ The contention that the act of the Legislature of Nebraska violates the provision of the Constitution of that state, in respect to the manner and form of enactment, is, we think, without substantial merit. The constitutional provision has been frequently construed by the Supreme Court of that state: People v. McCallum, 1 Neb. 182; Van Horn v. State, 46 Neb. 62, 64 N. W. 365; State ex rel. v. Board of Commissioners, 109 Neb. 35, 189 N. W. 639; State ex rel. v. Miller, 104 Neb. 838, 178 N. W. 846.

In the McCallum Case, the court in its opinion said (page 194 of 1 Neb.):

"The purpose of this provision is to pre-

vent surprise in legislation, by leaving matter of one nature embraced in a bill whose title expresses another."

In the Van Horn Case, the court in its opinion said (page 369 of 64 N. W. [46 Neb. 62]):

"In none of the cases already cited, and in none decided by this court, has it ever been held that the constitution required any subdivision of legislation into distinct acts, each having reference to only so much as might practically form a single act. On the contrary, it has always been said that the Legislature might choose for itself its manner of legislation, and that an act, no matter how comprehensive, would be valid, provided a single main purpose was held in view, and nothing embraced in the act except what was naturally connected with, and incidental to, that purpose."

We think that the act of the Legislature of Nebraska in question, in view of the foregoing decisions, should not be held invalid as failing to meet the requirements of the provision of the Nebraska Constitution above set forth.

Our conclusion of the whole case is that the order dismissing the bill and dissolving the restraining order should be affirmed.

It is so ordered.